**Law Office of Patrick Mause, PLLC**

Patrick W. Mause
290 North Meyer
Tucson, Arizona 85701
State Bar No. 24269
520.342.0000
520.342.0001 (Fax)
EMail: Patrick@PMauseLaw.com

Attorney for Plaintiff Barbara Eres

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Eres,<br><br>                Plaintiff,<br><br>  vs.<br><br>Life Insurance Company of North America, a Pennsylvania company<br><br>                Defendant. | Case No.<br><br>**COMPLAINT** |

For her Complaint, Barbara Eres ("Plaintiff"), alleges as follows:

**Parties, Venue, and Jurisdiction:**

1. Plaintiff was a resident of Maricopa County, State of Arizona at the times relevant to this Complaint.

2. Upon information and belief, defendant Life Insurance Company of North America ("LINA," dba Cigna Group Insurance) is a Pennsylvania corporation authorized to do business and doing business in Arizona.

3. Plaintiff's claim is for short-term disability benefits provided under her employer's ERISA-governed benefits plan. These benefits are fully insured by LINA.

4. The Court has jurisdiction under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*.

5. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

**The Benefit Plan:**

6. Ms. Eres began work for her employer, American Traffic Solutions, in 2011 and became covered under its ERISA-governed short-term disability (STD) plan (the "Plan").

7. On August 1, 2014, Ms. Eres became disabled within the meaning of the Plan due to multiple medical conditions, including but not limited to severe back and hip pain, knee pain and inability to ambulate or work effectively, and side effects of her medications.

8. After submitting proof of her claim, and by letter dated September 9, 2014, LINA approved her claim effective August 11, 2014, after satisfying the Plan's benefits waiting period.

9. LINA based its September 9, 2014 decision approving Ms. Eres' claim on the medical information Ms. Eres had submitted. This information included, among other things, an August 28, 2014 Medical Request Form from Ms. Eres' treating physician stating she was "unable to safely work 2° [secondary to] narcotic us & chronic hip & knee pain."

10. Based on that information and the additional medical documentation confirming her treating physician's findings, LINA's in-house nurse case manager determined on September 8, 2014 that: "Medical is supportive of impairment to the NOV 3 weeks from 8/26/14 as evidenced" by the medical documentation.

11. On September 9, 2014, the LINA personnel responsible for the "Second Eye Review" noted that he "agrees w/ decision for approval based on med sup and ncm [nurse case manager] recom."

12. LINA again reviewed Ms. Eres' claim on September 17, 2014, and again found "Medical is supportive of impairment" and recommended "to extend to NOV [next office visit] 9/30."

13.     On October 7, 2014, Ms. Eres submitted another Medical Request Form completed by her physician which again stated that she was "unable to safely work secondary to narcotic use; chronic hip & knee pain."

14.     On October 9, 2014, LINA's in-house nurse case manager determined that "medical supports to 10/10 as evidenced" by Ms. Eres' medical evidence, including that she ws "unable to safely work secondary to narcotic use and pain – will re-eval NOV- in December."

15.     On October 9, 2014, LINA wrote to Ms. Eres explaining that "your benefits have been extended."

16.     Less than three weeks later, on October 29, 2014, and when Ms. Eres' condition had not improved at all — to the contrary, it had gotten worse — the same LINA nurse case manager found that the "medical is not supportive of impairment as the AP fails to demonstrate a motor, sensory, neurological, vascular and/or neurovascular deficit supportive of impairment." This finding is unsupported by the medical evidence which consistently confirmed Ms. Eres' ongoing inability to work.

17.     On November 10, 2014, Ms. Eres' claim manager noted that he "agrees med does not support impairment from 10/11 forward."

18.     At no time did LINA note any improvement in Ms. Eres' condition that would have enabled her to return to work on a consistent, satisfactory, and full-time basis.

19.     On November 10, 2014, LINA informed Ms. Eres by letter that it was terminating her STD benefits.

**Ms. Eres Timely Appealed LINA's Decision And Submitted Evidence Confirming Her Ongoing, Total Disability**

20.     On April 10, 2015, Ms. Eres timely appealed LINA's decision terminating her STD benefits.

21.     With her appeal, Ms. Eres submitted additional medical documentation confirming her ongoing, total disability. This information included, among other things:

3

      A. A March 20, 2015 letter from her primary care physician, Dr. Douglas M. Lakin stating that Ms. Eres has been under his care since 2004, in October 2014 she reported "increasing problems with knee and back pain," "I found her ability to ambulate markedly limited," "she was using narcotic pain medication for relief, resulting in somnolence and lack of concentration that affected her work." He stated "I agreed that she was disabled at the time I saw her, based on this combination of symptoms and had supported her disability claim" and that she "is completely disabled at this time and has been for the past several months."

      B. Dr. Lakin office visit notes noting, among other things, that "I support your disability completely."

      C. Records from Dr. Bertrand P. Kaper documenting her ongoing medical conditions.

22. By letter dated May 15, 2015, LINA denied Ms. Eres' appeal, stating that her claim arose from "a motor vehicle accident back in August 2014" and that "Dr. Shah" had examined her in October 2014 and she "had full range of motion in her neck." Ms. Eres, however, was never in an August 2014 motor vehicle accident. She never treated with any "Dr. Shah."

23. On May 19, 2015, Ms. Eres informed LINA that it had upheld its decision terminating her STD benefits. However, the medical evidence LINA cited in its decision did not pertain to Ms. Eres. Instead, it involved physicians and medical conditions unrelated to Ms. Eres. In short, LINA got it wrong.

24. By letter dated May 19, 2015, LINA sent a second letter upholding its decision terminating Ms. Eres' STD claim. LINA stated that her claim was reviewed by "on staff Nurse Case Manager and Medical Director," those LINA employees "concluded that [Ms. Eres'] restrictions and limitations are not supported beyond October 10, 2014," and its "prior decision is unchanged."

25. LINA's decision is unsupported by and contrary to the medical evidence and is an arbitrary and capricious abuse of any discretion purportedly granted to LINA under the Plan.

26. Furthermore, LINA's decision is the product of its inherent financial conflict of interest as the entity that both funds benefits and determines entitlement to benefits.

27. Upon information and belief, the LINA employees involved in Ms. Eres' claim are entitled to certain bonus or incentive compensation based, in part, on the company's performance. Therefore, those employees have an improper financial incentive to deny as many claims as possible to ensure the largest possible pool of bonus money is available. These financial incentives and conflicts motivated and drove LINA's decision to improperly terminate Ms. Eres' claim and then refuse to reinstate her benefits despite clear medical evidence confirming that she remains disabled.

### Count One:  Claim for Benefits Under ERISA:

28. The STD Plan purportedly gives LINA discretion to determine a claimant's entitlement to benefits.

29. Upon information and belief, discretionary review authority was not properly delegated to LINA by the plan administrator.

30. To the extent LINA does have discretion to determine entitlement to benefits, LINA abused its discretion because its decision to deny Ms. Eres' disability benefits was arbitrary and capricious and was caused or influenced by LINA's and its reviewing physicians' inherent financial conflicts of interest. This conflict of interest precluded the full and fair review as required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

31. To the extent the *de novo* standard of review applies, LINA's decision was erroneous, contrary to the plan terms, and contrary to the medical evidence.

32. Ms. Eres has been injured and suffered damages in the form of lost STD benefits as a result of LINA's wrongful decision to deny her disability benefits.

33.   Pursuant to ERISA, 29 U.S.C. § 1132, Ms. Eres is entitled to recover unpaid disability benefits, prejudgment interest, reasonable attorney's fees, and costs from defendants LINA.

WHEREFORE, Plaintiff Barbara Eres prays for judgment as follows:

A.   For short-term disability benefits due under the Plan;

B.   For prejudgment interest;

C.   For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

D.   For such other relief as the Court deems just and proper.

DATED this 26th day of May, 2015.

                LAW OFFICE OF PATRICK MAUSE, PLLC

                By  s/ Patrick W. Mause
                        Patrick W. Mause
                        Attorney for Plaintiff